

NUMBER 13-12-00176-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JAMES ROBERT HUGHES,**                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                           **Appellee.**

---

## On appeal from the 24th District Court
## of Jackson County, Texas.

---

# MEMORANDUM OPINION ON REHEARING

**Before Chief Justice Valdez and Justices Benavides, and Longoria**
**Memorandum Opinion on Rehearing by Justice Longoria**

By one issue, appellant, James Robert Hughes, appeals the trial court's

revocation of his deferred adjudication community supervision and adjudication of guilt

on the charge of cruelty to livestock animals.  *See* TEX. PENAL CODE ANN. § 42.09 (West 2011).  We affirm.[1]

## I. BACKGROUND

On November 8, 2010, Hughes pled guilty to the offense of cruelty to livestock animals.  *See id.*  The trial court deferred adjudication of guilt and placed Hughes on deferred adjudication community supervision for a term of ten years.  On April 6, 2011, the State filed a petition to revoke alleging four violations of the terms and conditions of Hughes's community supervision.[2]  Hughes was appointed counsel on April 20, 2011.

On July 27, 2011, before the State's petition was heard, Hughes appeared before a grand jury and gave testimony regarding an incident that occurred on or about May 17, 2011, while Hughes was imprisoned or confined in a correctional or detention facility.  Before Hughes testified, the district attorney stated to Hughes on the record that (1) he was under investigation for the felony offense of harassment of a public servant; (2) he did not have to testify to anything that might tend to incriminate him; (3) anything he said could and would be used against him in a court of law; (4) he had the right to have an attorney present; (5) he must be truthful in his testimony or potentially face a charge of aggravated perjury; and (6) he had the right to quit the questioning at any

---

[1] On March 21, 2013, this Court issued a memorandum opinion and judgment affirming the trial court's judgment.  *See Hughes v. State*, No. 13-12-176-CR, 2013 WL 1188034 (Tex. App.—Corpus Christi Mar. 21, 2013, no pet. h.) (mem. op., not designated for publication).  Subsequently, on April 22, 2013, Hughes filed a motion for rehearing, arguing that this Court should decide whether the trial court erred in admitting into evidence statements Hughes made when he was questioned by the State before the grand jury without notice to his attorney.  The Court, having fully considered Hughes's motion and the contentions made therein, concludes that the motion should be denied.  Accordingly, the motion is denied.  Nevertheless, we withdraw our prior memorandum opinion and judgment of March 21, 2013 and issue this memorandum opinion and judgment in their place.

[2] The State's original petition was not included in the appellate record.

time. The district attorney asked Hughes if he understood those rights and still wanted to testify, and Hughes said he did.

The district attorney then had Hughes sign a written statement of rights, which provided as follows:

> I, James Robert Hughes, having been summoned to appear before the Jackson County grand jury on 7/27/11, hereby state that I was advised of the following rights which I have:
>
> 1) "Your testimony before this grand jury is under oath";
>
> 2) "Any material question that is answered falsely before the grand jury subjects you to being prosecuted for Aggravated Perjury";
>
> 3) "You have the right to refuse to make answers to any question, the answer to which would incriminate you in any manner;"
>
> 4) "You have the right to have a lawyer present outside this chamber to advise you before making answers to questions you feel might incriminate you";
>
> 5) "Any testimony you give may be used against you at any subsequent proceeding";
>
> 6) "If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you before making an answer to a question, the answer to which you feel might incriminate you".
>
> I HEREBY understand these rights and knowingly, intelligently, and voluntarily waive such rights and request permission to testify before the Grand Jury.
>
> [signature of James Robert Hughes]
>
> DEFENDANT

The oral and written statement of rights provided by the State tracked the relevant language of the Texas Code of Criminal Procedure.[3]

---

[3] The Texas Code of Criminal Procedure states in relevant part:

3

Thereafter, Hughes testified before the grand jury and answered questions regarding allegations that he committed the offense of harassment of a public servant while on community supervision.

On September 2, 2011, the State filed an amended petition to adjudicate Hughes's guilt alleging eight violations of the terms and conditions of Hughes's community supervision.[4] Included in the State's amended petition was the following allegation involving the subject matter of Hughes's testimony before the grand jury:

---

Prior to any questioning of an accused or suspected person who is subpoenaed to appear before the grand jury, the accused or suspected person shall be furnished a written copy of the warnings contained in Subsection (c) of this section and shall be given a reasonable opportunity to retain counsel or apply to the court for an appointed attorney and to consult with counsel prior to appearing before the grand jury.

TEX. CODE CRIM. PROC. ANN. art. 20.17(b) (West 2005).

The warnings contained in Subsection (c) provide as follows:

(1) "Your testimony before this grand jury is under oath";

(2) "Any material question that is answered falsely before this grand jury subjects you to being prosecuted for aggravated perjury";

(3) "You have the right to refuse to make answers to any question, the answer to which would incriminate you in any manner";

(4) "You have the right to have a lawyer present outside this chamber to advise you before making answers to questions you feel might incriminate you";

(5) "Any testimony you give may be used against you at any subsequent proceeding";

(6) "If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you before making an answer to a question, the answer to which you feel might incriminate you."

*Id.* art. 20.17(c).

[4] The State's Amended Petition for Revocation and Final Adjudication alleged in relevant part as follows:

In support of the State's Petition for Revocation and Final Adjudication, the State would show that the Defendant has violated the terms and conditions of said probation in the following respects, to-wit:

. . . Condition Number One (1) . . . "Commit no offense against the laws of this State or any other State or the United States of America." . . .

4

The State would show to the Court that the said JAMES ROBERT HUGHES violated Condition Number One (1) of his probation which provided that he shall "Commit no offense against the laws of this State or any other state or the United States of America." The State would further show to the Court that the said JAMES ROBERT HUGHES on or about May 17, 2011 in Jackson County, Texas did then and there while imprisoned or confined in a correctional or detention facility, to wit: Jackson County Detention Facility, and with intent to assault, harass, alarm or annoy another person, to-wit: Russell Durrant, a person JAMES ROBERT HUGHES knew to be a public servant, to-wit: a Jailer with the Jackson County Detention Facility, to contact the saliva of JAMES ROBERT HUGHES, while Russell Durrant was lawfully discharging an official duty in retaliation and on account of the exercise of Russell Durrant's official power and performance of an official duty, to-wit: by

---

Condition Number Eleven (11) . . . "Report to the officer as directed by the Judge or Officer by submitting an accurately completed and signed Monthly Report to the Officer and cooperating with the Officer during said report and obeying all rules and regulations of the Community Supervision and Corrections Department." . . .

Condition Number Fourteen (14) . . . "Abide by a 10:00 p.m. curfew every night. The defendant shall be in the defendant's home or place of residence before 10:00 p.m. each night and shall not leave such home or place of residence between 10:00 p.m. and 5:00 a.m. without the written permission of the Officer. The written permission, when issued, is to be kept on the defendant's person when away from home or place of residence." . . .

Condition Number Seventeen (17) . . . "Pay Court Costs in the amount of $348.00 at $55.00 per month, with the first payment being due and payable on or before January 8, 2011, and a like payment being due and payable on or before the same day of each month thereafter until fully paid through the CACD having jurisdiction." . . .

Condition Number Eighteen (18) . . . "Pay a fee of $60.00 per month, each and every month during the term of Community Supervision, with payments beginning November 8, 2010 to the CSCD having jurisdiction." . . .

Condition Number Twenty-Four (24) . . . "Perform satisfactorily 300 Community Service hours on or before July 8, 2012 through the Community Service Restitution Project of the CSCD beginning January 8, 2011 at a minimum of 17 hours per month." . . .

Condition Number Twenty-Five (25) . . . "Serve 30 days in the Jackson County Jail with credit for time served beginning March 11, 2011 by 7:00 p.m." . . .

Condition Number Twenty-Eight (28) . . . "Submit a copy of your income tax return filed with the IRS or Proof of Extension to the CSCD having jurisdiction by April 15[th] of each year during the term of Community Supervision and bring your IRS Income Tax Refund check to the CSCD having jurisdiction immediately upon receipt and endorse the check to the CSCD to be applied to fees payable through the CSCD by the defendant."

spitting on the said Russell Durrant, in violation of Condition Number One (1) of his probation as aforesaid.

Hughes pled not true to the alleged violations. The trial court held an evidentiary hearing on the State's amended petition and heard evidence regarding the eight alleged violations of the terms and conditions of Hughes's community supervision, including testimony from Russell Durrant and a second corrections officer regarding the spitting incident. During the hearing, the State also offered into evidence State's Exhibit 32, an audio recording of Hughes's testimony in the grand jury proceeding in which Hughes admitted to telling Durrant to "go fuck" himself and to spitting "at" him, and State's Exhibit 33, the written waiver of rights signed by Hughes prior to testifying before the grand jury. The trial court admitted the evidence over the following objection by Hughes's counsel:

> Your Honor, I'm going to object based on the fact that these statements were taken while the Defendant had a counsel of record and counsel was not notified of the statements and these were done during a custodial interrogation. I understand he waived these rights and there may be an issue whether they can be used in other cases, but I believe as far as this revocation hearing that he was questioned without an attorney present and he had an attorney at the time.

The trial court found all the violations alleged in the State's amended petition to adjudicate to be true, revoked Hughes's community supervision, adjudicated Hughes guilty, and assessed a 20 year prison sentence. This appeal ensued.

## II. ANALYSIS

In one issue, Hughes argues that the trial court erred in admitting into evidence State's Exhibit 32, the audio recording of Hughes's grand jury testimony, and State's Exhibit 33, the written waiver of rights signed by Hughes prior to testifying before the grand jury.

6

## A.  Standard of Review

We review a trial court's order revoking community supervision for an abuse of discretion.  *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (citing *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)).  The State bears the burden of showing by a preponderance of the evidence that the defendant committed a violation of his community supervision conditions.  *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993).  If the State does not meet its burden of proof, the trial court abuses its discretion in revoking the community supervision.  *Cardona*, 665 S.W.2d at 493–94.

Proof by a preponderance of the evidence of any one of the alleged violations of the community supervision conditions is sufficient to support a revocation order. *Antwine v. State*, 268 S.W.3d 634, 636 (Tex. App.—Eastland 2008, pet. ref'd) (citations omitted).  Thus, to obtain reversal of a revocation order, the appellant must successfully challenge each ground on which the trial court relied to support revocation.  *Sterling v. State*, 791 S.W.2d 274, 277 (Tex. App.—Corpus Christi 1990, pet. ref'd) (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Grim v. State*, 656 S.W.2d 542, 543 (Tex. App.—Corpus Christi 1983, no pet.)).

## B.  Applicable Law

Revocation proceedings "are judicial proceedings, to be governed by the rules established to govern judicial proceedings."  *Ex parte Doan*, 369 S.W.3d 205, 212 (Tex. Crim. App. 2012).  "[F]ormal rules of evidence do apply, . . . [and] [t]he [Texas] Rules of Evidence and the exclusionary rule to bar illegally seized evidence apply fully in a Texas probation revocation hearing."  *Id.* at 210.

## C. Discussion

In this case, we must decide whether the trial court erred in admitting into evidence statements Hughes made when he was questioned by the State before the grand jury without notice to his attorney.[5] The Texas Court of Criminal Appeals has held that "[o]nly through notice to defense counsel may authorities initiate the interrogation of an indicted and represented defendant." *Holloway v. State*, 780 S.W.2d 787, 795 (Tex. Crim. App. 1989) (en banc). According to the court, "that counsel must be notified of any attempt to interrogate his client was made clear in *Powell v. Texas*, 492 U.S. 680 (1989) (per curiam)." *Id.* Thus, in *Holloway*, the court held as follows:

> In the case before us, at the time of the police-initiated interrogation, appellant had been indicted for capital murder and had been appointed counsel. Appellant had met with counsel. The Sixth Amendment right to counsel had attached at the time appellant was indicted and the attorney-client relationship was established; as such, appellant's unilateral waiver of his Sixth Amendment right was invalid despite appellant having received the required *Miranda* warnings. Appellant's subsequent confession was obtained in violation of his Sixth Amendment right to counsel and the trial court erred in refusing to suppress it.

*Id.* at 796.

In this case, Hughes had been indicted for the offense of cruelty to livestock animals and was placed on deferred adjudication community supervision. The State then filed a motion to adjudicate guilt, which triggered Hughes's Sixth Amendment right to counsel, and counsel was appointed to represent Hughes in the revocation proceeding. *See Montejo v. State*, 556 U.S. 778, 786 (2009) ("[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings.").

---

[5] The State does not dispute the assertion by Hughes's counsel that the questioning was initiated without counsel's knowledge or presence.

8

The State contends that Hughes had no right to counsel because the questioning before the grand jury pertained to a "completely separate offense" for which he had not been indicted. *See Wesbrook v. State*, 29 S.W.3d 103, 117 (Tex. Crim. App. 2000) ("This right to counsel is considered offense specific and cannot be invoked once for all future prosecution."). Although we agree that the offenses were separate, we conclude that Hughes had a right to counsel because the State's questioning of Hughes before the grand jury constituted a "critical stage" of the criminal proceeding in which counsel had been appointed to represent Hughes. *See Montejo*, 556 U.S. at 786.

When the State initiated the questioning of Hughes before the grand jury, it announced that Hughes was under investigation for the offense of harassment of a public servant. At that time, the State also knew that Hughes was on deferred adjudication community supervision, one of the terms and conditions of which was that Hughes commit no violation of any law of this State. The State also knew that Hughes had been appointed counsel because he was accused of violating the terms and conditions of his community supervision. The questioning of Hughes before the grand jury constituted a "critical stage" of the revocation proceeding because the State's interrogation of Hughes incriminated him in violating the terms and conditions of his community supervision by committing the offense of harassment of a public servant. *See id.* ("Interrogation by the State is such a [critical] stage."). Accordingly, we conclude that Hughes had a right to counsel under the Sixth Amendment. *See* U.S. CONST. amend VI.

Among other things, the Sixth Amendment gave Hughes "the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton*, 474 U.S. 159,

9

176 (1985); *see Thompson v. State*, 93 S.W.3d 16, 25 (Tex. Crim. App. 2001) ("Thus, if the right to counsel has attached as to a charged offense, and the police interrogate the defendant in the absence of his counsel about matters that the police knew or should have known might elicit incriminating evidence pertaining to the pending charges, the Sixth Amendment right to counsel has been violated and such evidence is inadmissible at the trial of those charges."). Here, the State went directly to Hughes to initiate an interrogation before the grand jury without giving notice to Hughes's counsel. As noted above, the State did obtain an oral and written waiver of Hughes's right to counsel. However, under circumstances such as these, courts have held that "an accused's unilateral waiver of his Sixth Amendment right is invalid." *Cloer v. State*, 88 S.W.3d 285, 288 (Tex. App.—San Antonio 2002, no pet.); *Upton v. State*, 853 S.W.2d 548, 557 (Tex. Crim. App. 1993) (en banc) ("[W]hen an attorney-client relationship has been established after a defendant's Sixth Amendment right to counsel attaches, the police may initiate interrogation only through notice to defense counsel. That was not done here. Therefore, the two statements were taken in violation of appellant's Sixth Amendment right to counsel.") (citations omitted).

Nevertheless, according to more recent cases, the Sixth Amendment does not bar state-initiated interrogation of an accused who has previously asserted his right to counsel. S*ee Hughen v. State*, 297 S.W.3d 330, 335 (Tex. Crim. App. 2009). Thus, "a court can no longer presume that a waiver of a right to counsel executed after the right to counsel has attached is invalid." *Flores v. State*, 299 S.W.3d 843, 852 (Tex. App.—El Paso 2009, pet. ref'd). "Formerly, once an accused requested the assistance of counsel based on his Sixth Amendment right the police could not initiate any

questioning or attempt to induce a waiver of his right to counsel for that police interrogation and any waiver obtained was invalid." *Id.* at 851 (citing *Michigan v. Jackson*, 475 U.S. 625, 635–36 (1986)). However, in *Montejo*, the United States Supreme Court overruled this bright-line rule. *See Montejo*, 556 U.S. at 797. The Court rejected the notion that "no *represented* defendant can ever be approached by the State and asked to consent to an interrogation." *Id.* at 789 (emphasis in original). Under current law, an accused must make a clear assertion of the right to counsel when the State initiates interrogation and in that case no interrogation should take place. *Flores*, 299 S.W.3d at 852. In this case, there is no evidence that Hughes made any assertion of the right to counsel when the State initiated his questioning before the grand jury.

Furthermore, "[o]ur precedents also place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant so long as a relinquishment of this right is voluntary, knowing, and intelligent." *Id.* "The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Montejo*, 556 U.S. at 853. "Waiver is demonstrated regarding pretrial questioning if an accused decides voluntarily not to rely on his right to counsel and that decision is made under the understanding that he could remain silent and request a lawyer and that the State could use any statement he gave against him." *Flores*, 299 S.W.3d at 852. Here, the criteria for a valid waiver are met.

State's Exhibit 32, the audio recording of Hughes's grand jury testimony, and State's Exhibit 33, the written waiver of rights signed by Hughes prior to testifying before the grand jury, establish that the State advised Hughes orally and in writing that he had a right not to testify, a right to have a lawyer present, and that any statement he gave

11

would be used against him. The record affirmatively demonstrates that Hughes understood the foregoing admonishments and made a knowing, voluntary, and intelligent choice to speak outside the presence of his lawyer. Moreover, Hughes does not deny that he knowingly and voluntarily waived his right to have an attorney present.

Hughes's sole contention is that the State violated his right to counsel by initiating the questioning without the knowledge or presence of counsel. As set forth above, however, the Supreme Court has overruled the bright-line rule that once an accused requested the assistance of counsel based on his Sixth Amendment right, the State cannot initiate any questioning or attempt to induce a waiver of his right to counsel for that interrogation and that any waiver obtained was invalid. *See Montejo*, 556 U.S. at 797. Accordingly, we reject Hughes's contention that the waiver of his right to counsel was invalid. On this record, Hughes has not established a violation of his Sixth Amendment right to counsel or that the trial court erred in admitting into evidence State's Exhibits 32 and 33.

Furthermore, Hughes has not challenged the sufficiency of the evidence to support the trial court's finding that he violated the terms and conditions of his community supervision, as alleged by the State in its amended petition. Accordingly, we conclude that Hughes has not demonstrated that the trial court abused its discretion in revoking his community supervision. *See Sterling*, 791 S.W.2d at 277.

Hughes's issue is overruled.

## III. CONCLUSION

The judgment of the trial court is affirmed.

_____
NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
24th day of October, 2013.